Good morning, gentlemen. The first case on this morning's docket is the case of Dan Stevens and Neal Thompson v. Robert L. Newman and trustee of Land Trust v. People's National Bank v. Robin Newman and Brandy Newman. We have Mr. Daniel Janowski for the appellant. Good morning. And Mr. Michael Fallon for the appellate. And you may proceed when you're prepared. Your honors, may it please the court. Counsel? My name is Daniel Janowski, and I'm an associate at Shaw & Martin here in Mount Vernon. I represent People's National Bank of McLeansboro, the appellant in this matter. By the way, a brief introduction of the facts here since this has been a pending case for over a decade now. Robert and Terry Newman, two of the appellees in this matter, operated a number of Taco John's restaurants in southern Illinois through their company, New Group Incorporated. In order to fund that operation through a series of loans that they would receive from People's National Bank. In order to continue those loans, their wives, Brandy and Robin Newman, and as we've referred to them in our brief as the Newman wives, signed a number of commercial guarantees on September the 22nd of 2000. A couple months after that, there was an SBA guarantee note that was issued that had loaned $230,000 to New Group on December the 7th of 2000. A few months after that, in March the 21st of 2001, New Group had been sold to Amigo Food Services, or as we refer to them in our brief as Amigos, through terms that were founded on understanding of parties and a memorandum of understanding. Then, later that year, Amigos had, through an assumption agreement with People's National Bank, the Newmans and Amigos, had agreed to assume the SBA note and pay the portions that were due under that. Then about a month later, in October the 17th of 2001, through a debt retirement agreement that had been executed through People's National Bank and the Newmans, all the debt that the Newmans owed to the bank at that time had been extinguished except for any liability that would remain under the SBA note. Then, fast forward a year to late 02, and Amigos defaulted on the SBA note and on rent that was due at one of the Topper John's restaurants in Ann and Illinois, which ignited this present litigation. Stevens and Thompson, the original plaintiffs in this matter, sued to recover the back rent from the Newmans. The Newmans, pursuant to one of the terms in the memorandum of understanding, had sued the bank in order to recover the money to pay for the back rent. The bank filed affirmative defense to that claim, which then brought up the second issue up on the field for today, and brought in Brandy and Robin Newman in order to recover on these commercial guarantees. And so, after a number of years now, this is being brought before this court. Before I get to those two issues that were briefed for appeal, the first thing I'd like to discuss would be the motion to take judicial notice of termination agreement and purchase of loan. That was filed November the 10th of last year by the appellees. We filed our response on November the 18th. And by order of this court on November the 25th, it was ordered that that issue would be taken up with this case. And it will be. And it will be, okay. And I think there was a reply filed, or a motion to file a reply, and that as well will be taken up with the case. Okay. Thank you. I guess to begin, I'd just like to state that in order for this, what the appellees have requested to be judicially noticed is this termination agreement that had been executed between SBA and the Newmans, and the Newman wives in order to bring a close to any type of liability that would be owed to the SBA. But before we can analyze whether this had any effect upon this litigation, the first determination must be whether SBA had the ability in order to execute this termination agreement in the first place. And so one of the facts that must be judicially noticed before that can occur is that SBA owned that note. And in support of that, the appellees have cited to an affidavit filed and affidavit stated by one of the attorneys for SBA that states his knowledge and belief that SBA had purchased the loan on August the 18th of 06. In support of that, they cite to Kennedy v. Edgar a case in the fourth district that gives the standard in order for a fact to be judicially noticed. In that case, the appellant had sought to have a letter from the Illinois Medical Advisory Board judicially noticed because it was up on a DUI issue and that this letter was to move one of the facts in the DUI case. However, the court in that case had declined to take judicial notice of that because it wouldn't accept new factual evidence that should have been provided to the lower court. So this critical evidentiary material in the language of the court wouldn't be noticed. And so the standard is whether the fact is capable of immediate and accurate determination through a source of indisputable accuracy. And it's our position that this affidavit itself isn't enough in order to meet that burden. It's not immediate and accurate due to the fact it's an affidavit. And also that this is not a source of indisputable accuracy because of the fact it's stated just to his knowledge and belief. And so therefore, we would request that that motion be denied. Now going on to, if the court has no questions on that, we'll move on to the first issue that's up for appeal today. And that is the summary judgment finding for Robin and Brandy Newman that they would not be liable as guarantors of the SBA note. In its order of May the 18th of 2012, the lower court had found that due to the sale of Amigos, due to the sale of New Group to Amigos, that this guarantee, that this guarantee agreement then became no longer operable because Amigos was not listed as one of the borrowers on the guarantee. And secondly, that People's Bank violated its duty to act in good faith and in fair dealing. The court's reasoning in this was incorrect for a number of reasons. First, on this issue of whether Amigos is still a guarantor, is still a party to which they should guarantee the debt. Under the guarantee agreement, the Newman wives are still liable for the debt for this SBA note. Because not only was New Group listed as the borrower, but borrower is also defined as any heir, successor, assigned to transferees of that borrower. And so therefore, as the purchaser of New Group, they would be a successor transferring the sign, would still be liable. This is also contemplated in the original memorandum of understanding during the sale that had occurred, because in that it states that sellers will remain liable for any debt. Thirdly, these changes are authorized in the actual guarantee itself. Things such as the jury waiver, the choice of venue, and the confession of judgment, those are clauses that are contained within the guarantee and that were later added to this SBA note. And also, more broadly, in the duration of guarantees, guarantee in the duration, in the guarantor's authorization to lend the sections of that guarantee, it allows for these broad changes to be effective. Finally, the waiver material, the guarantee and waiving type of material alterations, I stated that any defense is waived except for actual payment. And while these might seem like broad swaths in order to guarantee these material changes, this court in DuPoint State, Bank of Dalby, had found that even if there are broad statements of liability, that if the guarantee is written in an unambiguous way, that therefore it must be interpreted as written. Finally, on to the issue of the court finding that People's Bank violated its duty to act in good faith and fair dealing. This is an issue of fact that hasn't been determined by the court, and therefore the court wasn't able to make a determination of this upon a summary judgment finding. While this case has been pending for, like I said, over a decade, there hasn't been a trial yet, there hasn't been any type of finding of fact. And so therefore, before a breach can be found, there must be set for a trial in order to find the fact of whether the bank had violated this duty. So if the court has no question on that second issue, I'll move on to the final issue here, and that's the summary judgment finding in favor of the Newmans. This summary judgment stems from that original memorandum of understanding that had been executed at the time of the sale. In that agreement, Amigos was to offer a letter of credit in the sum of $150,000 payable to the bank and to the Newmans in order to secure any type of outstanding liability. Then later in that retirement agreement, executed roughly six months later, the banks and Newmans had agreed that the bank would withhold $81,000 from that note in order to secure the payment of this lease agreement in Anna. However, after being brought into the suit, the bank alleged, through an affirmative defense, that there was an oral waiver of that requirement in that contract. So, before the court can make the summary judgment finding in November the 3rd... Can you tell me what the oral waiver was? Yeah, the oral waiver was at the time of, at the time the letter of credit had been paid, it's been alleged in two different ways. One is that the Newmans were in the, was in the bank's office and they said, Bank, we would rather have you keep the money than have the, than have the landlords get the money. And so, like I said, there hasn't been a finding of fact on that issue, but it has been, but it has, was alleged in that oral waiver for the affirmative defense. And secondly, there was an implied waiver there alleged as well that states that they were aware of that right at the time of the default, that they didn't, they didn't assert any intention of withholding any of that money at the time that that money was paid before, before the lease became past due. Any other questions? No. And so, before the court can find on the summary judgment motion, the court first struck the affirmative defense by stating that there was not a proper cause of action stated. That was done in an order of, maybe 18, the same one that found for summary judgment for the Newman wives. And then, after a motion to reconsider, a few months later in November, that's whenever the court finding that there was no issue of fact since the affirmative defense had been stricken, then entered a summary judgment finding that the language in the memorandum of understanding was clear, that the bank, or letter of the language in the memorandum of understanding was clear, and that the language in the debt retirement agreement was clear that the bank should have withheld $81,000. However, this, when looking at this affirmative defense, this court reviews that de novo whether proper allegations have been made, and in review of that, a waiver is an intentional relinquishment of a known right, either expressly or impliedly, as I was just looking into, that those allegations were in fact contained within that affirmative defense. And also, the Newman's should be stopped from making that assertion, because there is an unambiguous promise, bank keep the money, that the promisee relied upon that the bank in fact did keep the money, that the promisee's reliance was expected and foreseeable, whenever you tell the bank keep money, they're going to do that, and that was relied upon to the bank's debt track, because now that they were brought into this suit. The affidavits argue in their brief that in addition to not being stated, being stated correctly as a cause of action, that there is also a oral modification clause, no oral modification clause in the agreement. However, it's pretty clear that oral modification clauses can in fact be waived, and that under the Illinois, they also, employees also argue that under the Illinois Credit Agreement Act, makes this not applicable, because this isn't in writing, as they've alleged is the strong form of the statute of frauds. However, the act itself requires only that an action by a debtor against a creditor be, must be in writing, and that here we have a creditor against the debt, and so therefore this would not be applicable to them. There's been no holdings that would show that this is, that it is effective, in essence reverse of how the statute is written. Finally, there were two other affirmative defenses that were stricken in that May 18 order, and those were both affirmative defenses of failure to state a cause of action, and the court found that this was not a proper affirmative defense, and therefore struck those that were effective against, that were affirmative defenses to the Newman's count two and count three. Count two was a conversion, and count three was a breach of fiduciary duty. However, there is case law suggesting and cited in our brief, this government employee's insurance, that a total failure to state a cause of action can be raised at any time, and therefore it would be proper to allege this is an affirmative defense, because in the conversion there were no facts alleged to support the conversion, pretty closely a restatement of the breach of contract, and there were no facts to show that there was a breach of fiduciary duty, because there is ordinarily not a fiduciary relationship created between a debtor and a creditor. There must be something else that occurs in order to create a fiduciary duty between those two, and therefore without any type of allegation there would be no cause of action there. And so if the court has no questions. No. Thank you. You have the opportunity for rebuttal. Thank you. Thank you. May it please the court. Counsel, my name is Michael Dell, and I represent the appellees in this case. I think I'll follow Appellant's counsel in presenting the issues. I'll first address this issue of mootness, because if I'm right on mootness, this goes away. Second of all, I'll address the issue of the non-enforceability of the wives' guarantee. And third, I'll talk about the judgment on the pleadings, not a summary judgment, but a judgment on the pleadings in favor of the husbands when the bank refused to use the $81,000 they agreed to in writing to take care of the lease. So let's begin at the beginning, mootness. We filed a motion, as the courts were, to take judicial notice of certain items. And that judicial notice was what? The judicial notice was of an affidavit and document showing that the bank, since 2006, didn't even own the loan on which they're suing the wives under their guarantee. Why is that? Because the bank contacted, as the affidavit shows and document shows, says, if somebody doesn't pay our loan off, the SBA, under the federal statutory provisions, buys the loan back. They basically buy it from them. They own it. Once they own it, they can do what they want to do. Guess what they did? They owned it. They forgave the wives and the husbands. You don't owe anybody. We're the owner of the loan. Everything's forgiven and you're released. So when that happens, and if they were to be repaid, would it be a double dip? Oh, yeah. You're exactly right. For exactly the same amount of money or a difference? I think when the SBA bought the loan back, it's like when you buy accounts receivable. If you've got an account receivable for $100, somebody may buy it and say, I'll give you $80 for it, something like that. So, Judge, I don't know the identical amount that's in the affidavit, but basically the SBA bought it back. Yeah. And that's the irony of this whole thing. You're going to go after the wives and collect $230,000, which not entitled to, which the owner said they're gone. They get to go free. Whatever amount of discrepancy they're asking for the full amount. Yes. Yes. That's what's collateral. And the point on mootness is simply this. The point on mootness, you can't give relief if it's going to be useless. There's no relief to be granted. What sort of relief could this appellate court give? We're going to remand it back down and have them proceed along, or we're going to remand it back down and say you can't collect the money. That's why it is moot. And I agree with counsel. When we talk about mootness, we talk about – and judicial notice, I should say, because we're taking judicial notice that it's moot. It's got to be accurate, sourced, indisputable evidence. Okay, counsel says, well, the affidavit may not be indisputable. It may not be indisputable. It's a factual issue. Nonsense. The affidavit by the SBA attorney who's in charge of this loan, who has knowledge of this loan, says on information and belief, it's called to testify. The affidavit's fine. The affidavit is fine. No motion to strike the affidavit. And what's interesting is there has been no allegations that what's in the affidavit, the document showing that the bank doesn't own the loan, can't proceed against it otherwise, is wrong. Here's what I thought yesterday, and this hasn't been cited, and the reason it's not cited in the briefs is because it goes to oral argument, and I want to point this out to the court. There's two cases, McCaskill, M-C-C-A-S-K-I-L-L, McCaskill, 298 Federal 377, Federal 7th Circuit, and Kolar, C-O-L-Y-A-R, an Illinois Supreme Court, 213, Illinois, 111, 835. Okay, why do I bring these to the court's attention? Let's end it now. During rebuttal, you asked counsel, does the bank own the loan? Because whatever he says is abiding judicial admission. Why play around? Let's find out. Well, if they didn't buy back all of it, it wouldn't, you believe that it wouldn't make sense? Yeah, yeah, it's like Medicare and stuff. Let's assume hypothetically, Judge, it's a loan for 230,000 or so. The SBA buys it back for 225,000, minus 5,000 fees. It doesn't matter. They don't own the loan. They can't go after the buy. So what I'm saying is we can talk, and I will address briefly why it's unenforceable, even if you don't take judicial notice, but I think we can solve the problem. Ask counsel for a rebuttal. They ought to know. What's interesting, nowhere in the briefs, nowhere anywhere did they ever say, yeah, we do own the loan. They tiptoe around it. Well, you know, that's a question of fact, and we may need some evidence. You know, let's call it out. Ask her. There's an argument in the briefs by counsel just now that this is critical evidentiary material that must be decided by the court, and it wasn't brought up by the court. Two short responses. One is you can take judicial notice, and this court's done it many a time. You don't have to raise it below. You don't have to raise it below to take judicial notice if something's moved. It doesn't have to be. And two is critical evidentiary material. Well, here's where I find it ironic. Guess what? We found out in January of 2014, after this case has been pending for years and after we asked for discovery under 213 interrogatory and 214 request to produce, we asked, give us all the documents concerning this loan. They never produced the fact that they didn't even own the loan. We had to get it from the government. And when we got it, what, okay, well, at that time it's up on appeal. I'm thinking, well, what am I going to do? I'm thinking, well, take judicial notice. There's no magic about going to the federal government and getting loan documents. We did it for you. We got an affidavit saying we did it for you, and here it is. They don't refute it. So as far as critical evidence matters that have to be developed at trial level, yeah, I guess I would have liked to have presented it at the trial level. It would have just made my case that much stronger. We couldn't produce it. We couldn't produce it because we didn't know it existed. We're going under pleadings that we own 230,000 under this guarantee. Well, guess what? They don't own it. They don't have standing in this appellate court. They don't have standing in the trial court to bring this cause of action against the wives. So bottom line is this. I think you can take judicial notice of it. I think it's accurate, easily ascertainable, true information, and it renders this appeal to the wives. Let me make it clear. This is a multiple-count complaint. They got a 304A finding for the husband's judgment on the pleadings, for the wife's summary judgment, and we still got stuff pending below. Okay, so the case won't be over. There's some other stuff that's not material to this issue, to this appeal. But I want the wives out. They don't belong in this case, and the bank knew that they don't belong in this case. So walking through this, though, because I have hundreds on what forgiveness the SBA really was entitled to give. You know, when you think of, like, hospital, your insurance, paying, you know, what they do, and then, of course, you're still obligated or you default on your mortgage. They sell your house. You're still obligated. So you're saying that the SBA, part of their arrangement with the bank is if they buy back the loan, then they extinguish all the liability? Yes. And that's not in dispute? Correct. Okay. Don't take my word for it. Ask counsel. I will. Yeah. That's exactly right. Am I correct? Yeah, you're out. You don't have to get that complicated. I understand, you know, because we all have insurance, and if you go to the hospital and the bill's for $1,000 and the insurance company will maybe pay you $300, it will be extinguished. Why? Because they have an agreement with the insurance company that they take, you know, 30 percent on the dollar. Similar to this. But here's the way to look at it. Whoever owns the loan gets to forgive the guarantors of the loan. They own the whole loan. Own it all. Okay. Got you. Okay. The Y's guarantee is unenforceable for several reasons. I'm not going to spend a lot of time because we analyze it in our briefs. One is there's a change in the term agreements. Once you change the term agreements and the guarantee, read the guarantees, and it's real clear. It's page 31 in our appendix. I think it's RC 103 to 105. It's real easy. You can read the guarantees, and basically it doesn't provide for changing anything. The guarantee was this. We, the Y's, guarantee the debt of the husband's new room. We don't guarantee anybody else who comes along with the bank and buys the things over the note, et cetera. They're not going to do it. It all won't make sense. The restatement of suretyship that we cite in the brief, too, says if there's a modification of any loan, and counsel just says there was, or was there a modification, we're going to add an acceleration clause. We're going to add a default provision. We're going to change the interest rate. We're going to change the name of the person you're going to guarantee for wives. There's a lot. The restatement of surety says if there's a modification and it increases the risk of the guarantor, they're discharged. That's exactly what happened in this case. The guarantee that the Y signed does not allow the bank to unilaterally change the debtor of the bower. That's all there is to it. Change of terms, as I mentioned. And then the final one is briefly touched upon. What counsel touched upon is the doctrine of good faith and fair dealing. We all know in Illinois every written contract has a duty of good faith and fair dealing. How many times have we been around the block on that one? The chemical bank case we cite says, hey, listen, if there's a guarantee, even if the guarantee said we waive all defenses, the courts have held in chemical bank, if there's a breach of good faith and fair dealing, that's unenforceable. J.P. Morgan's decision that we cite simply says, guess what, if you're a bank or a lender, you have a duty to inform the guarantors, the wives, of any change in facts that have occurred that may increase your risk. There was none. These are all pleadings. You don't need discoveries. It's all on there. It's been pleaded. So there's a covenant of good faith and fair dealing that just hasn't been complied with. So that's my point I just want to make for the wives. Number one is it's moot. They don't own the loan. They can't go sit there and hold the wives liable. Two, even if it's not moot, it's unenforceable. Why? Because it changed the terms of the party. And thirdly, it violates the implied faith of duty of good faith and fair dealing. Let's talk about the husbands a little bit. As counsel pointed out, what happened is Amigos buys into the—their new group owns a bunch of taco jobs. Amigos is going to buy them. So they sell it to Amigos. Amigos is part of the consideration, assuming the loan and getting more loans from the bank. And, by the way, Amigos has to come up with a $150,000 letter of credit. So America South Bank comes up with a $150,000 letter of credit. Who's the beneficiaries for this? The bank and the Newman's. And why is that? Because, as counsel pointed out, the facts, we know that, hey, we're selling these taco jobs. And, by the way, we got a release with the plaintiff. This whole lawsuit started with Dan Stevens filing a lawsuit saying, show me the money. You didn't pay my rent. And they said, yeah, we did pay you the rent. Amigos is supposed to pay it. Amigos didn't pay the rent. They went belly up. So Amigos didn't pay the rent. So not to worry. We say with the written contract between the parties on this letter of credit that is between the bank and the Newman's, it says, you will set aside, we agree that $81,000 will be set aside to pay off the lease. So what happens when the lease is not paid? The bank takes the $150,000, uses it to apply to seven other loans by Amigos. It has nothing to do with the Taco Bells. Applies it to seven other loans and says, we're not using that for the $81,000. So what do you have to say about the alleged oral waiver? Okay, the oral waiver, that's the affirmative defense. That's kind of interesting. They made three affirmative defenses. The other two I won't even discuss. We can get into it if we need to. This is the key one. Their argument is, we have an affirmative defense of a stop. Okay, we know under the Code of Civil Procedure this is a proper affirmative defense. The other two are not. Failure to state a cause of action is a bogus affirmative defense. It's nothing. You can't say failure to state a cause of action is an affirmative defense. This isn't federal court where they allow you to get away with it sometimes. So you have to plead it with specificity. And what they're saying is, okay, we have an oral agreement. This is the first time. You won't find any written decision where a lender says, oh, they lost the money. We have an oral agreement. All the cases that are cited by the parties deal with, oh, the debtor. Oh, I don't owe the bank any money. The banker and I agreed this orally. The courts have said, that ain't going to work under the Illinois Credit Act. It's not going to happen.  This is a case of first impression as far as I'm aware. Yeah. Well, you know, what's good for the goose is good for the gander. Or, more importantly, it insists. We call it, I call it, and, well, I call it because that's what the law says. It's a mutuality of contractual obligations. I find it ironical. We point out that under the Illinois Credit Agreement Act, which governs loans. We know that. We're not fighting that. It has to be in writing. That makes sense. Okay. This oral agreement is not writing. But, more importantly, let's set aside that credit agreement act that Counselor's talking about. Read the contract between the parties. Here's what it says. There's an agreement between the bank and the Newman's regarding the $71,000. It's clear as a bell. The judge properly rules this way. You don't need a jury trial. You don't need a fast rule issue. Here's what it says. This agreement that you're going to hold the $81,000, Mr. Baker, this agreement may not be modified except by a written instrument executed by all parties hereto. Paragraph L, appendix page 37 of our brief. It can't be modified unless by a written instrument executed by all parties. This is great. This is the first time I'm actually seeing a bank say, wait a minute, it doesn't apply. We have an oral agreement. Well, no, you don't. No, you don't. Because the contract says you can't have an oral agreement. The court was right in saying, adios, that affirmative defense is not going to stand. Judgment on the pleadings. It's stricter. And as I pointed out, Judge, as you mentioned, it really is mutuality of the contract. So the Illinois Credit Agreement Act says a debtor can't say the bank orally agreed to change everything. He can't do that. Well, now the lender can say that? Well, the debtor said I can do this. No, the Act doesn't say that. And what's interesting about the Act, nowhere will you find in that Act that it says the bank has a right to orally modify. It doesn't. It's silent. So if it's silent, guess what? The legislature didn't address it. And if they didn't address it, mutuality of contract applies. It's good law. That's what's going on here. I think those are the points I want to make. Let me just sum it up real quick. Judicial notice. The case is moved. Ask counsel. Finding conditions. I want to hear him say that they own the note. I want to hear him say that. If they say that, I guess perhaps it could go back. But if they go up, number one. So I think you can take judicial notice that the bank no longer owns a $230,000 note, regardless of what the SBA paid for it. Once they own it, they get to forgive the wife. The wife can go home. Regardless, the wife's guarantee is void and unenforceable because the bank and Emile's start changing all the terms. They didn't guarantee. They never did. They didn't say, go ahead and change any terms you want to. Contrary to what I thought. I think I disagree with counsel on that. They didn't say that. They'd be nuts to say that. And finally, judgment on the pleadings for Bob and Terri Newton. Why is that? Because the affirmative defense is two of them. Failure to state a cause of action for conversion. Failure to state a cause of action for good faith and fair dealing. That's not an affirmative defense. So here's another point I made. If you answer a complaint, this is law school basic pleadings. If you answer a complaint, you admit that the facts are well pleaded. You may have an affirmative defense that defeats it, medical malpractice. You may answer it, but then you're going to raise the affirmative defense, maybe a statute of limitations. They answered it. They don't have any standing to say that, geez, it's not proper. And more importantly is, no word of record do I see, well, let us amend our affirmative defenses. They chose, as case law is clear, they chose, once something is stricken, an attorney has a choice. We either amend by leaving the court, asking to leave the court, or we stand on it and we go up to the appellate court. They stood on it. They're up here and ain't going nowhere. Thank you, Your Honor. Thank you, Mr. Dolan. Mr. Janowski, you have the ball. And right out of the box, I want you to know that we have not ruled on the issue of the judicial notice. But of course, we do want to know what your position is with respect to how you can recover on something that the bank no longer owns. Or do you believe they still do own? Well, from my conversations with the bank, they believe that they still own the note. And from their explanation- Partial monies, or did the SBA not have the authority to release the parties? Well, from my understanding from the bank and their explanation of how this SBA-guaranteed note works, is that during the application process, the bank says, okay, we've got a small business here that the SBA, that they were requesting SBA guarantees on. And so after the SBA gives their blessing to it, the SBA says, okay, we'll guarantee that note. The bank issues the SBA-guaranteed note, pays the bank, pays the money to the debtors. And then the bank sells that note to the SBA, who then securitizes that and makes that an investment instrument. Then upon default, the SBA requires that the bank buy the note back, try to recover any type of money that they can. And then after any type of recovery can be had, that's whenever the SBA says, that's whenever the bank then goes back to the SBA and says, SBA, here's how much money we were able to recover. Now we're seeking to receive your guarantee of the amount that you agreed to in that SBA note. And so- So, but in this case, we're already at the final stage, correct? Because they did release the parties. The SBA did. The SBA, like I said, the SBA has attempted to release the parties. We don't know if the SBA, we disagree that the SBA has the ability to make that release because the bank is still in that collections process. So you're saying that the bank has not collected and the SBA has not proffered the difference. That's my understanding. That's my understanding, yes, yes, Your Honor. We had, apparently after the SBA note had been issued, the bank had sold the note to the SBA, who then, at default, required the bank to buy it back, and now we're in that collection procedure right now. Okay. And so that's how the bank still has the ability to collect upon this. And I agree with counsel that the guarantee agreements are clear, that upon reading of those guarantee agreements that all of these changes were authorized, that Amigos is a successor and a sign of new group, and so, therefore, they still guarantee the debt on that. And that the waiver of good faith and fair dealing, while that might not be, while I agree that that might not be waivable just in a general defense waiver, if it is specifically waived, it can be waived. And also that that's a finding effect whether there has been a breach of good faith and fair dealing. And we don't know if there hasn't been yet because there hasn't been factual finding to that effect. And also, finally, I guess I'll touch upon the Illinois Credit Agreement Act. This is a term that was written, it could be written just as an obligation of the debtor in order to require that any type of procedure that the debtor might try to prosecute against the bank, that would be required in writing. The act states debtor, that debtor is the one, if it has an action against the lender, they're the ones who are required to have something in writing. You can't just say, okay, well, bank, you have one term under this contract, debtor, we can just mix and match these all around and just require everybody under this principle of mutuality, in order to be required to just pick and choose whichever terms that they want to enforce against each other. And so that's why the act is explicit that the debtor is the one who's required in order to prosecute something that would be required in writing. If there's no further questions, I'll go ahead and open it up. Thank you very much, Mr. Penofsky. And as I'll also, in your argument, in your brief, we'll take the matter under five. But you're in your rule, of course. At this time, we need to take a brief recess to substitute one of our judges.